UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF RHODE ISLAND

MORROBEL CANELO, B.D., Pro Se,.
v.

HOWARD G. SUTTON,

[redacted] 06 210 T
C.A. No.

THE PROVIDENCE JOURNAL COMPANY,

BELO CORPARATION,

MARK T. RYAN,

PAUL M. FARRELL,

SANDRA J. RADCLIFFE,

JOEL P. RAWSON,

MAURA P. BRODEUR,

MIHAEL J. DOOLEY,

DEBRA S. HILL,

WAYNE D. PELLAND,

ROBERT B. WHITCOMB, et al.

## CIVIL RIGHTS COMPLAINT

This is civil action filed pursuant to 42 USCA 1983 by the Plaintiff, MORROBEL CANELO,B,D as, an inmate at the Rhode Island Department of Correction Adult Correctional Institutions, in Cranston, Rhode Island, alleging violations of his constitutional rights by the named Defedant's. The Plaintiff is seeking declaratory judgment, compensatory and punitive damages and injunctive relief. The Plaintiff seeks trial by jury.

## JURISDICTION

1. This is a civil rights action pusuant to 42 USCA 1983. This Court has jurisdiction under 28 USCA 1331 and 1343(3). The

Plaintiff also invokes the pendent jurisdiction of this Court to decide and hear matters relating to state law, as well as claims relating to policies and practicies of The Providence Journal Company.

PARTIES

2. The Plaintiff is an incarcerated inmate at the Rhode Island Department of Correctional Institutions, in Cranston, Rhode Island. He is presently housed and classified to the Medium Security Facility #1.

3. Defendant Howard G. Sutton, Chairman of the Board, Publisher, President & CEO of The Providence Journal Company, in Providence, Rhode Island. Located at: 75 Fountain Street, Providence, Rhode Island 02902. He is sued in his official and individual capacity.

4. Mark T. Ryan, Excutive Vice President & General Manager, of The Providence Journal Company, in Providence, Rhode Island. Located at: 75 Fountain Street, Providence, Rhode Island 02902. He is sued in his official and individual capacity.

5. Paul M. Farrell, Senior Vice President-Advertising, of The Providence Journal Company, in Providence, Rhode Island. Located at: 75 Fountain Street, Providence, Rhode island 02902. He is sued in his official and individual capacity.

6. Sandra J. Radcliffe, Senior Vice President-Finace, of The Providence Journal Company, in Providence, Rhode island. Located at: 75 Fountain Street, Providence, Rhode Island 02902. She is sued in her official and individual capacity.

FACTS

13. On Sunday March 23, 2003, the Providence Journal Company printed an extremely nocuous news paper article in an offensively erroneous fashion in which the defendant(s) publicly and humiliatedly stated that. "Mr. Morrobel IDENTIFIED HIMSELF USING HIS OLDER SON'S NAME" in an attempt to avoid accusations. A man was wanted by the name he goes by", or, something to that effect, in respects to the un--derlined above mentioned STATEMENT, it has altered the Plaintiff's mind, radiating emotional and cognitively odious abnormalities, which Plaintiff has medical evidence in support of this claim. Plaintiff states at no given time he did ever use or ever intended to use his eldest sons name in any shape, way, or form. Infact when the Plaintiff was arrested, Plaintiff explained to the Providence Police Officers, that he had shot those individuals because they had robbed and beat the Plaintiff. the Plaintiff was robbed and assaulted of TWELVE thuosand dollars ($ 12,000.00). The reason for carrying the large sum of cash was to buy Plaintiff's son his first car, since becoming of age, and, Plaintiff's son required transportation to and from school. Plaintiff has copy of the check that was cashed, which he was later assaulted and robbed for. Plaintiff has a copy of the check from the attorney on record of the state of New York, Attorney Joseph A. Romano. Also the arresting officers of the Providence Police Department had Plaintiff's wallet at time of arrest, which held Plaintiff's New York State driver I.D. with Plaintiff's full name and address: Braulio D. Morrobel Canelo, 855 E 233rd Street, Bronx, New York 10466. At no specific time was Plaintiff ever charged with the crime of obstruction of justice, or was the charge ever mentioned in on police

report, or, any of the four different versions that the officers gave in their four statements, or, in any other accounts thereby. The Providence Journal company and all Defendant's article foretold has made an impact causing some extremely irreparable damage to myself, my family and others. Eventhough the officers of the Providence Police Department gave different reports of their statements, there was no supporting evidence to support that obstruction of justice was what Providence Journal Company had printed. Plaintiff clearly stated that he was the shooter and that his children had nothing to do with the whole criminal matter, and, to **charge Plaintiff with everything that Plaintiff takes full responsibility for it, and, to release his children (let them go).** The Plaintiff was concerned for his children and their safety. Plaintiff has statement made by a police officer that bestdescribes what Plaintiff did say to a certain extent, which is somewhat the same as Plaintiff has mentioned above. The arresting Police read Plaintiff his rights thereafter Plaintiff had made this comment to them, and, **said nothing of any false name especially that of Plaintiff's eldest son.** If Plaintiff would of gave false name at the time of arrest,would have resulted in more criminal charges being filed for "obstruction of justice".Not to forget that the proper New York state Identification was already in the possesion of the arresting Providence Police Officers. Plaintiff has sufficient evidence from an efficient source to support Plaintiff's claim to this Honorable Court.

My complaint to this Honorable Court against the Defendant(s) of The Providence Journal Company are for liability suit regarding fabricated and degrading reports. Which in turned caused mental anguish, emotional distrees, dereliction of duties, defamation of character, bodily stress, and depression among all other things. With this said it has (the article) had an overwhelming effect on my profoundly mental and physical state of wellbeing, and Plaintiff's reputable public image. The prolifical version is in terms more redundantly prolix in which it's verbiage is useful. I find it supportively efficacious. I also have the infuriating evidence that has burned the bridges and the accountability of my family and friends. The Providence Journal Company article has demeaned me in such a manner that people imaginably think over zealously bad untrustworthy thoughts about me. To the regards of, "What kind of father would do such a hurtful thing to his children, among other things" I vigorously bring this matter to this Honorable Court in the hope that it can be resolved in a timely fashion, wherefore I pray therein, thereof. Therefore, I am hypersensitive to deliberate belittling statements made of that nature, and, this behavior simply can not be tolerated or go unpunished. Although, not a coward which I was obviously branded as. I happen to be a U.S. veteran of the Department of United States Navy in which I was an aviation gunner onboard the U.S.S. Vandergrift in which I manned the fifty caliber gun aboard the helicopter "Ocean Lord 2-5" as my battle station during operation Desert Storm/Shield (1990). I'm also not one to hide behind hypercritical statements and then, being hypocritical about it/them. The Providence Journal Company and all Defendant(s) abruptly "wrote", printed and published a statement negligently and/or knew that the publi-

shed statement was false and it defamed me. I absolutely did not use or give the Providence Police Officer my eldest son's name in any shape form or way at time of my arrest. The news article printed by the Providence Journal Company exhaustively exposed me to public scorn, hatred, comtempt embarrassment, and humiliation. I was ridiculed and, it has injured my reputation. Causing economic and mental instability. It caused severe emotional injury and it has damaged me in my profession and employment. I was devastated after reading it from the news paper clip provided and saved by my ex-wife (mother of my children) cut from the Providence Journal Company article (exhibit) and sent to me at the Rhode Island Department of Correctional Institutions, to my prison cell just before I made bail.

## CLAIMS

## FIRST CAUSE OF ACTION

14. That the actions of all the Defendant(s) of The Providence Journal Company throuhout this complaint, violated the Eighth Amendmentsof the United States Constitution, and the Rhode Island State Constitution. Rights to protect citizens from cruel and unusual punishment. Which is also protected by the Fourteenth Amendment of the United States Constitution, and the Rhode Island State Constitution.

## RELIEF

Wherefore, the Plaintiff request that this Honorable Court enter the following relief:

A. Issue Declaratory Relief against the named Defendant(s) stating that they did in fact violate Plaintiff's Constitutional Rights.

B. Issue an injunction against the Defendant(s) ordering them to comply with established prosedures and policy in incidents that involve Plaintiff's Rights and rights of the citizens of the United States of America. The rights of the that had been violated caused cruel and unusual punishment, by false fabricated reports, and false statements made and published.

C. Grant Compensatory Damages in the amount of five hundred thousand dollors (# 500,000) for all loss wages, and family damages caused by the Defendant(s).

D. Grant Punitive Damages in the amount of five hundred thousand dollors ($ 500.000) against the Defendant(s) individually, et al.

E. Grant any and all other relief that the Plaintiff might be entitled to under the law.

I declare under penalty of perjury that the foregoing is true and correct.

Executed on March,22,2003.

[signature]

Morrobel Caneio, B.D. Pro Se,.

Police Narrative: Providence Police

"On 3/22/03 at approx 0400 hrs. Canelo Morrobel DOB 3/26/64 and his sons Oraldno Morrobol DOB: 1/24/88 age 15 and Brualio Lempitsky DOB: 11/25/85 age 17 went to a party on Florence St. (unknown address). Once inside, the person running the pasty asked Canelo to leave because he had brought two young men. Canelo got upset nd the three left in a gold Jeep Cherokee and drove off around the block. In the vehicle he got a hold of a pistol that wa located under the back seat. He loaded the revolver and returned to the party house and fired shots toward the house (no report filed). He then drove off once again circling the area. At approx. 0500 hrs. Canelo saw four subject's walking on Atwells near #820. While driving the vehicle he leaned out from the drivers side and randomly fired shots at those subjects walking. He struck three out of the four, Brian labrie DOB 8/8/80 in the foot, Tyrone Watts DOB: 9/24/81 in the right leg, Jason Rainville DOB: 4/23/83 in the chest, and Daryl Prout DOB: 4/27/83 had no injury. None of the injuries were life threatening. The three injury victims were transported to RIH for treatment. The three in the Jeep left the area and went into Johnston where Canelo told his son Braulio to dirve and Canelo got into the passenger seat. He reloaded the weapon and told his son to drive back towards Atwells. The Jeep was spotted on Manton Ave. by Ptlw. Bibeault and she summonded other vehicles into the area. The car was stopped and the three were taken into custody at gunpoint. Inside the vehicle a handgun was seized under the front seat. At the scene,Canelo made statements to police that he did the shooting and not his sons and he was the only one to blame. Canelo was turned over to the Detectives for investigation and Braulio and Orlando were TOT Youth Services. Witness statements were taken from two witnesses and the two sons of Canelo. Also detectives responded to RIH and spoke to the victims. They will respond to detectives for statements after their discharge from the hospital. Detectives went to speak with Canelo in the cell block. He became very belligerent and uncooperative and then asked for a lawyer. He also complained that he had an injury to his shoulder. Detectives contacted Rescue to take him to RIH for treatment. After the investigation Canelo Morrobel was booked and charged with Four Counts of Assault with a Dangerous Weapon, Possession of a Firearm without a License, Using a Firearm During the Commission of a Crime of Violence, and Discharging a Firearm from a Motor Vehicle. ATF also responded to detectives to attain information on the firearm and to conduct a firearms trace."

2. **Statement of Defendant**

On 4/5/05 this Probation Officer met with subject in the Probation Office at 250 Benefit Street, Providence, RI. The purpose of the Pre-Sentence Report was explained and he agreed to make a statement regarding this case.

He stated that he was living in New York City at the time. His son, Braulio Lempitsky, age 17, was

living with his mother in RI. The teenager was requesting that his father buy him a car. Subject came to RI to find a car for his son. Subject came to RI very early on the morning (3 A.M.) of 3/22/03. Subject was carrying a large amount of cash ($12,000) because he had just settled a lawsuit in New York and planned to use it to purchase the car. He carried the money in a pouch strapped to his waist. He wanted to celebrate the settlement of the lawsuit and decided after the trip from NYC to have a few drinks. The bars were closed. He saw some men on Broad St. and asked them where to get some liquor. They told him to follow them because they knew a place to purchase liquor at the hour. Since he was close to his sons' house, he wanted to pick them up because he knew they were waiting up for him. After picking up his two sons they followed the men to a bootlegger's house in Providence. Subject wanted to buy a bottle but was told it was only served inside the house. Subject, his two sons and the two men they had followed went into the house.

They stayed in the house drinking for 40-50 minutes. His sons did not drink while they were there. Subject bought several rounds of drinks using $100 bills. Subject began to get concerned when 5-6 black men came downstairs to "check them out". This happened several times. Subject therefore decided to leave with his sons. As they went to leave, the sons were let out the front door subject believes because they were believed to be underage. Subject was told to stay inside and the door was blocked by at least 8 or 9 large black men. Subject used his auto starter to unlock the doors and start the engine of his Jeep so his sons could get into the car. Subject was then asked what was in the pouch he had on his person. Subject told them it was none of their business. Someone held a gun to his head and another had subject in a chock hold from the back, still another man ripped the cash pouch off subject's waist. Everyone was laughing and swearing and subject saw another man with a bank-type pouch and fought with this man. Subject ripped that pouch away. He was hit in the back of the head during the struggle and hit the floor but was able to hold onto the pouch.

Subject reached into the pouch and pulled out a revolver. Those standing around then ran into the house and locked the door. Subject then shot into house – "all 5 shots". Those inside, 8-12 black men, ran out the back of the house and toward the corner. Subject ran toward his Jeep and realized there were more bullets in the pouch so he reloaded. He also heard 3 or 4 shots from the back of the house so he felt they were shooting at him.

Subject went back to the Jeep, reloaded the gun and chased some men running toward the corner. He shot toward the ground to scare them. Subject then fled the scene.

Subject drove to Johnston with his sons where he told them he had been robbed. He reloaded the gun, had his son drive the car and they returned to the scene of the incident 15-20 minutes later . He thought the police would be there and wanted to report that he had been kidnapped, robbed and assaulted.

The police were there when subject and his sons arrived. He tried to explain that he had been robbed but they refused to listen and arrested him because of the shooting. He and his sons were taken into custody. Subject said he was tackled by Officer John J. Lough who dislocated subject's shoulder. Subject continues to suffer from this injury and needs surgery to repair it but has no medical coverage at present. His money and some additional money he had stashed in his vehicle

was never recovered.

Subject stated that he is not racist or a prejudiced person. He admits he lost his cool and was wrong. He states he should have called the police to report the robbery.

3. **Statements of Victims**

Letters were sent to victims Brian Labrie (counts 1,2), Tyrone Watts (count 3), Jason Rainville (counts 5, 10) and Darryl Prout (count 7), requesting that they contact this Probation Officer regarding the impact this crime had on them. As of this writing there has been no response.

THIS IS THE STIGMATICALLY DISSEMINATING STATEMENT

a.Note* Where it states,"AND IDENTIFIED HIMSELF USING HIS OLDER SON'NS NAME

b."Highlighted"

c.Sunday,March,23,2003.(printed)



The Providence Journal

# New York man charged with injuring 3 in drive-by shooting

PROVIDENCE — A Bronx, N.Y., man was arrested Saturday morning on four counts of assault with a dangerous weapon after allegedly shooting and injuring three Providence men, while with his sons, in a drive-by shooting on Atwells Avenue.

Canelo Morrobel, 38, was driving with his 15- and 17-year-old sons around 5 a.m. when the shooting occurred. The victims, all of Providence, were treated at Rhode Island Hospital. Brian Labrie, 22, of Wisdom Ave., third floor, was shot in the foot; Tyrone Watts, 21, of 69 Joslin St., second floor, was shot in the right leg, and Jason Rainville, 19, of 100 Veazie St., was shot in the chest.

The men, found on the stairs of 820 Atwells Ave., told the police the shots came from the driver's side window of gold Jeep Cherokee. The police stopped the Jeep soon after on Manton Avenue near Delaine.

Morrobel and two boys, identified as his sons, were taken from the Jeep at gunpoint. Several live, loose rounds and a black revolver were found under the driver's seat.

The brothers, both of Providence, made statements to youth services officers and were released pending further investigation. Morrobel was booked and charged with assault with a dangerous weapon, possession of a firearm without a license, using a firearm during the commission of a violent crime, and discharging a firearm from a motor vehicle.

The police learned later that Morrobel had been arrested here earlier and identified himself using his older son's name. A person by that name is wanted on a Superior Court warrant.


NEW YORK STATE
DRIVER LICENSE
ID:687 670 352
DOB:03-26-64